[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO MOVE
The question before the court is whether the parent with physical custody of the child under a joint legal custody order (in this case the mother) may move out of the state to Long Island, New York, in order to improve her economic and living situation. Her parents live on Long Island and have an insurance business in which she would be employed. She would also have a house bought for her by her parents which both she and the minor child, Katie, have seen.
The original order of joint custody provided that there be a hearing in the event either parent wished to move out CT Page 7480 of the state.
The plaintiff objects to the move on the ground that it would not be in the best interest of the child because it would interfere with the plaintiff's present visitation schedule. He has been seeing the child for three weekends in the month plus one night a week for dinner.
The parties have been seen by two therapists in the past year, a Ms Rubinson and a Dr. Grunebaum. After several months of therapy with Ms Rubinson, there appeared to have been no progress in changing the relationship between the parties or in preparing the child for the move to Long Island should the court order it. The parties were then seen by Dr. Grunebaum who testified in court. While her opinion was inconclusive, it did contain the following findings and observations:
 1. The child has a poor relationship with her mother which is fostered by her father and which must be changed in order to permit the child to develop appropriately.
 2. The child says she has a good relationship with her father and feels relaxed with his family, but the therapist points out that the child is receiving very negative opinions of her mother from the plaintiff and his family — "hatred" was the word that she used to describe the father's feelings shared by his family. In the therapist's opinion, this would create conflict in the child.
 3. The move could be done without difficulty if the father approved it and assured her that she would not lose him.
 4. The therapist also said the problem was not where the child lived but the position of the plaintiff father with respect to her residence and her mother.
 5. The therapist also said the situation would not change so long as the parties remained where they were and the plaintiff's attitude towards the defendant continued as it appeared it could.
 6. While the child might be disappointed if the move were permitted, there is also possibility that the child's reaction might be one of relief — to be freed from the pressure under which she is now living.
 7. The mother's living situation in Long Island, which would appear to give her more time to be with the child, would have a beneficial effect on the relationship between the child and the mother. CT Page 7481
The best interest of the child would be to have two parents who treated each other with mutual respect. However, lacking that, she must at least have one parent who will not adversely affect her relationship with the other parent. In this case it seems clear that the plaintiff is either incapable or unwilling to cease expressing his hatred and/or negative feelings about the defendant in the child's presence if not directly to her. The defendant's attitude, on the other hand, as seen by the therapist was more one of sadness that she and the plaintiff could not work things out, and she at least spoke positively about the plaintiff as being a good father.
So long as the plaintiff's attitude persists, the child will continue to have conflicts and be torn between the two parents.
While she states that she believes she is going to live with her father, this would appear to be the message her father has given her, and that is, of course, another obstacle to her having a good adjustment to the move.
Whatever the future might bring, the court must deal with the situation as it presently exists. This includes factors mentioned above that the plaintiff's attitude is not likely to change in the near future and that that attitude has a negative affect on the child's relationship with her mother, a relationship which is crucial to the child's healthy development.
Moving to Long Island is not moving to Europe. It is accessible by ferry from Bridgeport and by car, though longer in time. The plaintiff appears to have no responsibilities at home since he lives with his parents, both of whom work. There would appear to be no reason why he could not exercise his weekend visits as he has in the past, though it may require more of his time to do so. As far as the weekday visits are concerned, this may take some arranging of his work schedule or his school schedule, but there again it is not impossible for him to get to Long Island by ferry in time to have dinner and return home later in the evening.
Therapy is available in Long Island. The defendant's situation would be vastly improved economically and timewise were she to move. She has already picked out a house in which to live. Katie has visited frequently with her and her grandparents so the area is not totally new or strange.
The move would give the defendant more time to be with Katie although the visitation schedule does prevent her from CT Page 7482 having as much time on weekends as she might like.
The motion for the defendant to move to Long Island is, therefore, granted. The present visitation may continue to be reviewed when the custody motion is heard. The defendant is ordered to provide counseling for Katie with a therapist approved by counsel for the child.
Both parties are urged to engage in therapy themselves so as to be able to present to Katie some semblance of a mutual regard for each other or, in the alternative, to stop expressing their disapproval or dislike for each other.
MARGARET C. DRISCOLL STATE TRIAL REFEREE